CHARLES M. LOYNES *vs.* LORING B. HALL COMPANY.

Middlesex.     December 10, 1906. — February 27, 1907.

Present: KNOWLTON, C. J., HAMMOND, LORING, BRALEY, & SHELDON, JJ.

*Negligence.*

An experienced workman in a shoe factory employed to run a machine for shaving or trimming heels assumes the risk of an injury caused by the "veneering" put in between the sole of a shoe and the upper being harder than usual, the degree of hardness depending on the amount of water absorbed by the veneering when "tempered," this being an obvious risk incident to his employment, and he none the less assumes this risk if three or four days before suffering an injury from this cause he complained to the foreman of his employer that the veneering used was not of proper stock and the foreman explained that this was because the regular stock had run out and that the trouble would be over as soon as the temporary stock was exhausted, and the temporary stock had been exhausted and "the shoes came all right" until the accident happened.

TORT for personal injuries received by the plaintiff on August 29, 1904, while working on a heel shaving or trimming machine in the shoe factory of the defendant at Marlborough. Writ dated November 18, 1904.

In the Superior Court *Hitchcock*, J. ordered a verdict for the defendant; and the plaintiff alleged exceptions. At the time of the accident, the plaintiff, who was fifty-two years of age, had been working at the shoe business for twenty years, and for about two or three years had worked on a machine similar to the one on which he was working when injured. He was shaving a heel by pressing it against the revolving knife on the machine when a hard piece of "veneering" threw off the heel from the knives on the machine and caused the plaintiff to cut his thumb. The plaintiff's description of the accident is quoted in the opinion.

*J. J. Shaughnessy,* (*F. P. O'Donnell* with him,) for the plaintiff.

*J. Lowell & G. McC. Sargent,* for the defendant.

LORING, J. The plaintiff was employed by the defendant, who was a shoe manufacturer, to run a McKay heel shaving or trimming machine. The only description given in the bill of exceptions is included in the following testimony of the plaintiff : " There were two knives for shaving the main part of said heel and two more knives known as rand cutters which are on a spring for cutting a part of said heel near the upper of the shoe, and that the shoe came to him with the sole and heel on it just as the sole was sewed and the heel nailed on the machine ; that the sole and shank were also on the shoe when he got it, and for the purpose of raising the shank it was necessary for the defendant to put in a small piece of leather between the shank of the shoe and the upper, on both sides of the shoe, and this small piece was fastened to the shoe and extended the full length of the shank and it came back to the front edge of the heel, and the shoes with the upper sole shank and heel were furnished to him by the defendant." Three or four days before the accident the plaintiff complained to the foreman of the room in which he worked that the veneering put in between the sole and the upper was not made of proper stock ; that it was larger and longer than usual and extended back " about an inch over the front of the heel and interfered with the plaintiff's shaving the heel." The foreman explained that the reason for this veneering having been used was that the defendant being out of regular stock had borrowed this from a neighbor, and stated that as soon as he had run off the shoes on which the borrowed stock had been used " the shoes would come all right." The plaintiff further testified that in three or four hours he ran off the borrowed stock " and then the shoes came all right." He also testified that " about two or three days from the time he complained he struck a shoe which seemed harder, and there was a piece of large, hard veneering in the shank of the shoe that extended back beyond the front of the heel, and as soon as it came in contact with the knives the large, hard piece of veneering threw off the heel from the moulding knives on said machine, and caused the plaintiff to cut his thumb ; that the leather

on the shoe he got hurt on was harder; that usually, the day before, the leather is put in water and tempered more or less; that some, of course, absorb more water, some less, and some the water won't affect at all."

The plaintiff was an experienced workman and had been working on a machine similar to the one in question for two or three years; and he testified that he did not need "any instructions." It was admitted that the light in the room in question was good.

On this evidence the presiding judge directed a verdict for the defendant, and the case is here on an exception to that ruling.

All that the plaintiff complains of is that the veneering in the shoe in question was harder than usual. The plaintiff himself testified that the veneering was more or less hard as it absorbed more or less water when "tempered" "the day before," and that some veneering "the water won't affect at all." The risk coming from the veneering's being more or less hard was an obvious one, incident to the employment which the plaintiff undertook. The defendant's duty to the plaintiff was not increased by the conversation had a few days before between the plaintiff and the defendant's foreman if (which is by no means clear) the veneering in question was not what the foreman assured the plaintiff he might expect in the future.

*Exceptions overruled.*